IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
CLARA LEE MASON,                  )
                                  )
                  Plaintiff,      )
                                  )
      v.                          )      1:13CV1150
                                  )
CAROLYN W. COLVIN,                )
Acting Commissioner of Social     )
Security,                         )
                                  )
                  Defendant.      )
```

**<ins>MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE</ins>**

Plaintiff, Clara Lee Mason, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Act. (Docket Entry 1.) The Court has before it the certified administrative record (cited herein as "Tr. \_\_"), as well as the parties' cross-motions for judgment (Docket Entries 13, 15). For the reasons that follow, the Court should enter judgment for Defendant.

**<ins>I.   PROCEDURAL HISTORY</ins>**

Plaintiff protectively filed an application for DIB on July 19, 2010, alleging a disability onset date of January 1, 2008. (Tr. 157-58.) She subsequently amended the alleged onset date to July 1, 2010. (Tr. 181.) Upon denial of Plaintiff's applications initially (Tr. 74) and on reconsideration (Tr. 90), she requested

a hearing de novo before an Administrative Law Judge ("ALJ"). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 33-54.) By decision dated September 13, 2012, the ALJ determined that Plaintiff was not disabled under the Act. (Tr. 20-32.) On October 20, 2013, the Appeals Council denied Plaintiff's request for review (Tr. 3-5), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] last met the insured status requirements of the Social Security Act on December 31, 2011.
>
> . . . .
>
> 2. [Plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of July 1, 2010 through her date last insured of December 31, 2011.
>
> . . . .
>
> 3. Through her last date insured, [Plaintiff] had the following severe impairments: osteoarthritis bilateral knees and left shoulder; dequervain's tenosynovitis of the left wrist and left thumb; bilateral carpal tunnel syndrome with remote history of release surgery; hypertension; obesity; depression; and anxiety.
>
> . . . .
>
> 4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . . .
>
> 5. . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform light

> work . . . except she was limited to frequent, not constant, use of the bilateral upper extremities. She could never climb ladders, ropes, or scaffolds. She must have avoided concentrated exposure to extremes of cold and concentrated exposure to hazards such as unprotected heights and machinery. She was limited to performing only simple, routine, and repetitive tasks, in that she can apply common sense understanding to carry out oral, written and diagrammatic instructions, and she could have no more than frequent contact with the public and coworkers.

(Tr. 22-25 (internal parenthetical citations omitted).)

In light of the foregoing findings regarding residual functional capacity, the ALJ determined that Plaintiff was capable of performing past relevant work. (Tr. 31.) Accordingly, the ALJ ruled that Plaintiff did not have a disability, as defined in the Act, at any time from the alleged onset date through the date last insured. (Id.)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial

3

evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not

4

disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [Supplemental Security Income] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).
6

Case 1:13-cv-01150-LCB-LPA   Document 17   Filed 07/21/15   Page 6 of 17

('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

### B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability because the ALJ failed to properly assess Plaintiff's credibility, resulting in an inaccurate RFC. (Docket Entry 14 at 4-9.) Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 16 at 5-8.)

In attacking the ALJ's credibility assessment, Plaintiff asserts that, "when an ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." (Docket Entry 14 at 9). Plaintiff further contends that the "ALJ [] did not articulate adequate reasons for rejecting [Plaintiff's] testimony," and the Court should remand the case on that basis. (Id.) Specifically, Plaintiff takes issue with the ALJ's assessment of her testimony concerning her hand and wrist pain (see id. at 4-8) and several inferences drawn by the ALJ as to Plaintiff's credibility from various inconsistencies in her statements in the record (see id. at 8-9). In support, Plaintiff cites to Hines, 453 F.3d 559, for the proposition that, "'[h]aving met [her] threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed,' [Plaintiff] '[wa]s entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e. that [her] pain is so continuous and/or severe as to prevent [her] from working a

full eight hour day.'" (Docket Entry 14 at 7 (quoting Hines, 453 F.3d at 565).)

As an initial matter, Plaintiff "bears the burden of establishing [her] impairments and the resulting limitations on [her] ability to perform work." Donnell v. Astrue, No. 1:09CV308, 2010 WL 3911425, at *3 (M.D.N.C. Oct. 5, 2010) (unpublished) (Dixon, M.J.), recommendation adopted, slip op. (M.D.N.C. Nov. 5, 2010) (Schroeder, J.). In order to successfully challenge the ALJ's analysis of Plaintiff's subjective complaints, Plaintiff must show how a proper credibility analysis would have resulted in additional functional limitations in the RFC and how that RFC would impact the ALJ's ultimate conclusion regarding Plaintiff's ability to perform the jobs cited by the VE. See McAnally v. Astrue, 241 F. App'x. 515, 518 (10th Cir. 2007) ("[W]e agree with the magistrate that, '[w]ith regard to [her] hypertension, loss of vision or skin problems, the claimant has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC [assessment] or discuss any evidence that would support the inclusion of any limitation.'"); Miles v. Astrue, No. 8:07-3164-RBH, 2009 WL 890651, at *14 (D.S.C. Mar. 30, 2009) (unpublished) ("[T]he plaintiff details various pieces of evidence which she contends the ALJ misconstrued . . . . The plaintiff, however, has not explained how such evidence, if fully considered, would have proven additional limitations

9

sufficient to eliminate the possibility that [the] plaintiff could perform the sedentary work required of her past relevant work. Accordingly, error, if any, in either failing to consider such evidence or in misconstruing it, would be harmless."). Here, although Plaintiff has made the conclusory statement that "this case must be remanded for proper assessment of her credibility, the medical record and her RFC," (Docket Entry 14 at 9), she has made no effort to show how a proper credibility analysis would have impacted the RFC and the jobs she could perform as a result of that RFC (see Docket Entry 14 at 4-9).

Nor does Plaintiff's generalized attack on the ALJ's credibility analysis withstand scrutiny. Social Security Ruling 96-7p, <u>Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements</u> ("SSR 96-7p"), as applied by the Fourth Circuit in <u>Craig</u>, 76 F.3d at 594-95, provides a two-part test for evaluating a claimant's statement about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" <u>Id.</u> at 594 (quoting 20 C.F.R. § 404.1529(b)).

If a claimant meets that threshold obligation, the fact finder must proceed to part two and evaluate the intensity and persistence

10

of the claimant's symptoms, as well as the extent to which they affect her ability to work. Id. at 595. In making this evaluation, the fact finder:

> must take into account not only the claimant's statements about her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (internal citations and quotation marks omitted).

At the outset, Plaintiff overstates the reach of Hines. That case holds only that, at part two of the credibility assessment, "subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability." Hines, 453 F.3d at 563 (emphasis added). In other words, under the appropriate circumstances, an ALJ may choose to rely exclusively on a claimant's subjective complaints to find disabling pain at part two of the credibility assessment. However, Hines does not compel ALJs to consider only subjective evidence at part two of the credibility assessment, as such a requirement conflicts with the regulations, which plainly require ALJs to consider a variety of factors in evaluating the intensity, persistence, and limiting effects of pain. See 20 C.F.R. § 404.1529(c) (directing ALJs to assess a claimant's medical history, medical signs and laboratory findings, daily activities, testimony about the nature and location of pain,

11

medication and other treatment used to alleviate pain, along with medical opinions from examining and non-examining sources).

As to her hand and wrist pain specifically, Plaintiff principally takes issue with the ALJ's characterization of her conditions as having improved through treatment, thus rendering those conditions less severe. (Docket Entry 14 at 7-8.) In that regard, Plaintiff contends:

> The question is not whether the claimant could obtain and perform a job during a period of remission, but rather whether the claimant could hold a job for any significant length of time. The record demonstrates that whenever [Plaintiff] experienced a period of improvement in symptoms, it was always followed by a period of symptom worsening with pain, finger locking and loss of sensation. Thus, [the ALJ's] pointing to a temporary period of improvement does not detract from [Plaintiff's] credibility regarding her chronic wrist and hand problems.

(Id. at 8 (internal citations omitted).) However, Plaintiff appears to mischaracterize the ALJ's interpretation of her hand and wrist pain. The ALJ concluded from the evidence in the record that, "[d]ue to [Plaintiff's] <u>recurrent</u> wrist pain and numbness, she could frequently, not constantly use both arms . . . [and] could not be exposed to cold temperatures . . . ." (Tr. 28 (emphasis added).) In other words, by describing the pain as "recurrent," the ALJ acknowledged that Plaintiff experienced periods of improvement and periods of worsening, a description that mirrors Plaintiff's own characterization of her symptoms above.

12

Notably, nowhere does the ALJ deem Plaintiff's testimony regarding her hand and wrist lacks credibility <u>because</u> the severity of her condition fluctuated over time. (<u>See</u> Tr. 26-29.) Instead, the ALJ reasonably determined that a recurrent condition would have a less severe impact on Plaintiff's ability to work than a constant condition or a condition that only worsened. (<u>See</u> <u>id.</u>) The resulting RFC assigned to Plaintiff reflects that determination in that the ALJ conditioned Plaintiff's ability to perform light work by limiting her "to frequent, not constant use of the bilateral upper extremities." (Tr. 25.) Moreover, the inclusion of that limitation suggests that the ALJ did not consider only the effects of Plaintiff's hand and wrist symptoms during periods of remission, as Plaintiff suggests (Docket Entry 14 at 8); rather, the ALJ contemplated that Plaintiff would not <u>at any time</u> be able to do a job that required the level of functioning of her hands and wrists normally associated with light work (<u>see</u> Tr. 28 ("Due to [Plaintiff's] recurrent wrist pain and numbness, she could frequently, not constantly use both arms.")).

Here, the ALJ's analysis of Plaintiff's subjective complaints of pain complies with the applicable regulations. The ALJ found at part one of the credibility assessment that Plaintiff had impairments that could reasonably be expected to cause her alleged symptoms. (Tr. 26.)[5] Proceeding to part two of the credibility

---

[5] Plaintiff has not alleged any error with respect to this part of the credibility inquiry. (<u>See</u> Docket Entry 14 at 4-9.)

13

assessment, the ALJ found, however, that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . [RFC] assessment." (Id.)[6]

In making that part two finding, the ALJ discussed the medical history and medical signs relevant to Plaintiff's hand and wrist pain. (Tr. 26-28.) Further, the ALJ reviewed observations from Plaintiff's treating providers as to the fluctuations in her hand and wrist pain which tended to support the view that she responded well to surgery and injections (see id.), including that, by February 2012 (immediately following Plaintiff's last date insured), her provider reported that her tenosynovitis had resolved and that "[Plaintiff] is doing well with her wrist. Only having occasional discomfort at times" (Tr. 478; see also Tr. 28). The ALJ next compared Plaintiff's own statements in the medical record and at the hearing concerning her daily activities, which tended to

---

[6] The Fourth Circuit recently issued a published decision, Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), which found that the ALJ erred by using, at part two of the credibility assessment, "boilerplate" language that "the claimant's statements concerning the intensity, persistence and limiting effects of [his pain] are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Id. at 639. The court joined the Seventh Circuit in holding that this language "'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'" Id. (quoting Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir. 2012)). However, the court concluded that the ALJ's use of such language would constitute harmless error if the ALJ had "properly analyzed credibility elsewhere." Id. Although in Mascio, the court did not find that the ALJ had elsewhere properly analyzed the claimant's credibility, id. at 640, in this case (for reasons discussed above), the ALJ did otherwise properly analyze Plaintiff's subjective complaints of pain.

14

suggest that, "despite the claimant's pain, the record shows no more than mild limitations in her activities of daily living." (Tr. 29.) In particular, the ALJ noted that Plaintiff "remained independent in her activities of daily living[,] . . . she cared for [her ill father] until his death in 2011[,] . . . [and] she was planting a garden . . . ." (Tr. 24.) In sum, the ALJ's credibility analysis as to her hand and wrist symptoms complies with the regulations and Fourth Circuit law.

As a final matter, Plaintiff also asserts that "[t]he rest of the ALJ's reasons for finding [Plaintiff] non-credible are just strange." (Docket Entry 14 at 8.) In that regard, Plaintiff objects to the ALJ's consideration of various inconsistencies between the record and Plaintiff's testimony at the hearing. (Id. at 8-9.) For instance, the ALJ noted that Plaintiff told two different versions of a story about injuring her wrist, one in which she did so trying to catch a falling child and another in which she was trying to catch an older woman. (Tr. 29.) Similarly, the ALJ observed that, "when asked about her garden at the hearing, [Plaintiff] denied spending time in her garden, which is inconsistent with her report to her own mental health provider in May 2012 . . . ." (Id.) In addition, the ALJ cited some discrepancies between the work history Plaintiff reported to her therapist and to the Social Security Administration. (Id.)

15

According to Plaintiff, the ALJ has "dredg[ed] up inconsistencies that do not exist" (Docket Entry 14 at 8) and that, for instance, referencing Plaintiff's two versions of the story about catching a child/elderly woman "was an improper reason for finding [Plaintiff] lacked credibility regarding her wrist impairments" (id.). However, the ALJ bears the duty to consider how inconsistent statements reflect generally on the credibility of Plaintiff's subjective complaints. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) ("Ultimately, it is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence."); see also Johnson v. Barnhart, 434 F.3d 650, 657-59 (4th Cir. 2005) (affirming ALJ's credibility determination based on inconsistencies in the record and the claimaint's unclear and evasive answers to the ALJ's questions). In addition, "[b]ecause [the ALJ] has the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 990 (4th Cir. 1984). Notwithstanding Plaintiff's explanations for some of these inconsistencies in her statements (see Docket Entry 14 at 8-9), the ALJ reasonably concluded that the presence of numerous inconsistent statements by Plaintiff in the record tended to render her statements generally less credible (Tr. 29-30).

Finally, as Defendant correctly observes, "even assuming the ALJ incorrectly deemed each of these statements to be inconsistent, such error would be harmless since [those were] not the only factor[s] the ALJ considered as part of his credibility evaluation." (Docket Entry 16 at 7 (citing Hosey v. Astrue, No. 2:11CV42, 2012 WL 667813, at *7 (W.D.N.C. Feb. 6, 2012), for proposition that, where credibility finding reflects consideration of entire record, mistake as to small piece of evidence constitutes harmless error).) Here, as discussed above, the ALJ considered a wide range of medical and opinion evidence in determining that Plaintiff's hand and wrist pain did not preclude her from performing light work with the prescribed limitations. For these reasons, substantial evidence supports the ALJ's credibility analysis.

### III. CONCLUSION

Plaintiff has established no grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment Reversing the Commissioner (Docket Entry 13) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 15) be granted, and that this action be dismissed with prejudice.

                                    /s/ L. Patrick Auld
                                    **L. Patrick Auld**
                            **United States Magistrate Judge**

July 21, 2015